Filed 3/16/21  Odd Fellows Sierra Recreation Assn. v. Coleman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ODD FELLOWS SIERRA RECREATION ASSOCIATION,<br><br>  Plaintiff, Cross-defendant and Respondent,<br><br>  v.<br><br>FREDDIE GLEN COLEMAN, as Trustee, etc. et al.,<br><br>  Defendants, Cross-complainants and Appellants;<br><br>SIERRA PARK SERVICES, INC.,<br><br>  Cross-defendant, Cross-complainant and Respondent. | F078823<br><br>(Super. Ct. No. CV58100)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Frank Dougherty, Judge.

Kassouni Law and Timothy V. Kassouni for Appellants.

Downey Brand and Bret F. Meich for Respondents.

-ooOoo-

This appeal concerns a dispute about road maintenance costs in a private subdivision and a related issue of road ownership. The trial court entered a judgment in favor of plaintiff, Odd Fellows Sierra Recreation Association (plaintiff) and cross-complainant, Sierra Park Services, Inc. (Sierra) against several lot owners (defendants)[1] for a recovery from defendants of their share of road maintenance expenses pursuant to Civil Code section 845. The trial court also found that plaintiff is the owner of the roads in the subdivision. Defendants appeal from the judgment. According to defendants, the trial court erred because: (i) the roads in the subdivision are not owned by plaintiff, but by defendants to the centerline of the roads abutting their respective lots, and (ii) Civil Code section 845 was inapplicable, but even if it applied, the measure of recovery was erroneous in this case. We conclude defendants have shown reversible error on one issue only—namely, road ownership. Therefore, the judgment is reversed in part, and the matter is remanded to the trial court with directions to enter a revised judgment on the issue of defendants' ownership to the centerline of the road abutting their respective lots, in accordance with the disposition set forth in this opinion. In all other respects, however, the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

The Subdivision

In or around 1950, plaintiff developed a portion of real property owned by it in Tuolumne County, California, into a subdivision called I.O.O.F. Odd Fellows Sierra Camp Subdivision No. 1. In 1959, plaintiff resubdivided a portion of I.O.O.F. Odd Fellows Sierra Camp Subdivision No. 1, which it called Odd Fellows Subdivision No. 2.

---

[1]     Defendant lot owners who filed the instant appeal are Freddie Glen Coleman aka Fred Coleman and Barbara Ann Coleman, Trustees of the Freddie Coleman & Barbara Ann Coleman Trust; Larry Giacomino; Deanna G. Mooney, Trustee of the Deanna G. Mooney Trust; Steven P. Wallace, Trustee of the Steven P. Wallace Trust; Joseph M. Nelson, Jr., Trustee of the Joseph M. Nelson, Jr. Trust; and Larry Lee Vaughn and Karin Louanne Vaughn.

2.

We refer to these numbered subdivisions together as simply the subdivision. The subdivision included some 364 separate lots, which were sold by plaintiff to third parties, who became lot owners. From time to time, individual lot owners have sold their lots to others. It is not disputed that, at the time plaintiff filed its complaint in this matter, defendants were among the current lot owners in the subdivision.

When this action was commenced, plaintiff still retained ownership of one lot in the subdivision known as the "caretaker's lot," which plaintiff used to house a caretaker who provided services to the lot owners. Plaintiff also continued to own other real property within the subdivision, including water wells, a recreation hall, a picnic area and playground, areas for disposal of pine needles, an automatic gate for entry into the subdivision, and various areas for the storage and maintenance of equipment.

As to the roads in the subdivision, plaintiff's position was and is that it retained ownership thereof. In 1996, plaintiff recorded a unilateral declaration stating that it owned the roads in the subdivision and was responsible for "maintenance, snow removal and drainage" of said roads (the 1996 Declaration). The 1996 Declaration acknowledged the easement rights of all of the lot owners in the subdivision for ingress and egress over the same roads.

Historically, plaintiff has provided certain services to the lot owners, including supplying unmetered water, maintenance and repair of the roads within the subdivision, snowplowing of such roads, pine needle disposal, garbage disposal, and recreational use of the recreation hall, fields and playground. From 1950 to May 31, 2012, all services provided by plaintiff to the lot owners were "bundled" together and were not provided on an "a la carte" basis. Each year, plaintiff would invite all lot owners to an annual meeting to discuss and approve the estimated cost of the services to be provided by plaintiff for the upcoming year. Afterward, plaintiff would inform the lot owners of the approved budget, divide the budgeted amount by the number of lots in the subdivision, and invoice each lot owner for their pro rata share.

3.

Plaintiff's Complaint

On March 26, 2013, plaintiff filed its complaint against defendants and several other lot owners for alleged failure to pay their respective pro rata shares of the annual cost of services provided by plaintiff to lot owners in the subdivision for 2012–2013, referred to in the complaint as the 2012–2013 annual fee, which was $1,024 per lot. The causes of action set forth in the complaint included the following: (1) quantum meruit, (2) "Maintenance Of Right Of Way Easement (Civil Code Section 845)," (3) common counts—account stated, and (4) common counts—open account. The second cause of action for relief under Civil Code section 845 demanded that defendants pay their respective pro rata shares of expenses attributable to road maintenance, repair, and keeping the roads accessible in inclement weather, all of which services were allegedly provided by plaintiff.

Defendants' Cross-complaint

Defendants filed a cross-complaint against plaintiff. In that pleading, defendants alleged the amounts charged to lot owners by plaintiff each year, referred to in the cross-complaint as assessments, were invalid. Sierra was named as an additional cross-defendant in the cross-complaint, apparently because in subsequent years after 2012–2013, Sierra had taken over the task of providing many of the services that had been provided by plaintiff. The cross-complaint filed by defendants included a third cause of action for quiet title alleging that the roads within the subdivision are owned by the lot owners within the subdivision, including defendants.

Sierra's Cross-complaint

Sierra filed a cross-complaint against defendants. Sierra alleged it provided road maintenance and other services to lot owners in the subdivision for fiscal years 2013, 2014 and 2015. Sierra invoiced defendants for payment of their respective pro rata shares of such annual expenses, but defendants failed to pay the amounts due for fiscal years 2013, 2014 and 2015. In seeking to recover the sums allegedly due, Sierra set forth

4.

causes of action described as follows:  (1) quantum meruit, (2) unjust enrichment, (3) "Maintenance of Right of Way Easement … Civil Code Section 845," (4) account stated, and (5) open book account.

Trial Court's Ruling

Trial was conducted on April 16 through April 18, 2018.  Evidence was presented at trial in the form of oral testimony and documentary exhibits relating to the subdivision; there was also apparently a stipulation of the parties as to certain facts.[2]  Posttrial briefing was permitted, and the matter was taken under submission.

On October 18, 2018, the trial court filed its statement of decision (SOD).  In its SOD, the trial court found in favor of plaintiff and Sierra on their respective claims, including on the causes of action for recovery of road maintenance expenses under Civil Code section 845.  The trial court also found that plaintiff was the owner of the roads in the subdivision.  Finally, the trial court held the causes of action asserted by defendants in their cross-complaint were not established.

Based on the SOD, the trial court entered judgment on November 30, 2018.  Notice of entry of judgment was entered on December 11, 2018.  Defendants' notice of appeal was timely filed on February 7, 2019.

**DISCUSSION**

I.  STANDARD OF REVIEW

Where the dispositive facts are undisputed, the question of ownership of roads in a subdivision based on the nature of the original grant is reviewed de novo as an issue of law.  (*Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301, 305, 308–309.)  Likewise, the question of the proper application and interpretation of a statute is reviewed de novo.  (*People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432; *Limited*

---

[2]  The record on appeal does not include a reporter's transcript of the oral testimony at trial; nor does it include the stipulation.

5.

*Stores, Inc. v. Franchise Tax Bd.* (2007) 152 Cal.App.4th 1491, 1496.) We are not bound by the trial court's stated reasons in support of its ruling; that is, we review the ruling itself, not its rationale. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083.)

## II.  OWNERSHIP OF ROADS IN SUBDIVISION—THE QUIET TITLE CLAIM

Defendants alleged in the quiet title cause of action of their cross-complaint that they, together with all other lot owners in the subdivision, own to the centerline of the private road or street abutting each of their individual lots. Defendants' claim was based on a well-established statutory presumption allegedly applicable here because of the nature of the grants to defendants. In its SOD, the trial court found that defendants failed to meet their burden of proof regarding the quiet title cause of action. Elsewhere in the SOD, the trial court held without explanation that plaintiff retained the ownership of all the roads in the subdivision. On appeal, defendants argue the trial court erred as a matter of law on the question of road ownership. As more fully explained below, we agree.

We shall begin our discussion of this matter by first summarizing the nature of the statutory presumption asserted by defendants. After that, we shall explain why the trial court erred in concluding that defendants had failed to establish their quiet title cause of action. The issue of whether the question of road ownership may affect the Civil Code section 845 cause of action will be considered separately in our discussion relating to that cause of action.

## A.  Statutory Presumption

Absent clear evidence of a contrary intent, certain presumptions will prevail regarding the construction of grant deeds. (*Besneatte v. Gourdin* (1993) 16 Cal.App.4th 1277, 1281.) Civil Code section 1112 states: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears *from the grant*." (Italics added.)

The statute applies equally to streets or roads.[3]  (See *Neff v. Ernst* (1957) 48 Cal.2d 628, 635–636; Sts. & Hy. Code, § 8308.)  To the same effect is Civil Code section 831, which states:  "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."

Consequently, "the recordation of a tract map delineating streets followed by the conveyance of lots by reference to the map presumptively conveys to the grantee fee title to one-half of the street on which the property abuts …."  (*Norcross v. Adams* (1968) 263 Cal.App.2d 362, 365.)  "It is well settled that where land is conveyed by a deed describing the property conveyed as a specifically numbered lot or block as designated on a map, which map also shows such property to be bounded by a street or highway, the grant will be considered as extending to the center of the street or highway, unless it clearly appears that it was intended to make a side line instead of the center line the boundary."  (*Main v. Legnitto* (1964) 230 Cal.App.2d 667, 673–674.)  In such cases, "[t]he purchaser of the lot owns one-half of the adjacent street in fee in addition to the lot measurement, as a matter of law *unless the grant manifests a different intent*." (*Safwenberg v. Marquez, supra*, 50 Cal.App.3d 301, 309, italics added.)  In *Neff v. Ernst, supra*, 48 Cal.2d 628, 635, the Supreme Court explained:  "[I]t will be presumed that where property is sold by reference to a recorded map the grantee takes to the center of the street or streets shown on the map as bounding the property, even though the streets shown therein appear to have been vacated or abandoned or the deed itself refers to the streets as having been vacated or abandoned.  *The presumption continues to apply in the absence of a clear expression in the deed not to convey title to the center line*."  (Italics added; accord, *Anderson v. Citizens Sav. & Trust Co.* (1921) 185 Cal. 386, 392–394.)

As the roads in the subdivision here are private, we observe the presumption does not depend on the street or road in question being dedicated for public use.  (*Main v. Legnitto, supra*, 230 Cal.App.2d at p. 674; *Anderson v. Citizens Sav. & Trust Co., supra*, 185 Cal. at p. 393.)  That is because the rationale for the presumption is the use of a street

---

[3]     As used herein, the terms road and street are regarded as synonyms.

or road as a *monument* for providing a lot boundary description, not whether the street or road happens to be publicly dedicated. (*Anderson v. Citizens Sav. & Trust Co.*, *supra*, at p. 393; see *Faus v. Nelson* (1966) 241 Cal.App.2d 320, 323–324 [in absence of qualifying language, use of a monument in a conveyance always implies the boundary is "the middle or central point" of the monument].) Further, there is nothing in the language of the statutes codifying the presumption to suggest an intention on the part of the Legislature to limit the presumption to publicly dedicated roads or streets. (See Civ. Code, §§ 1112, 831.) Accordingly, the presumption may be applied where, as here, the roads or streets involved are private. (See, e.g., *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 172–173 [applying presumption to private streets].)

B. <u>Defendants' Showing</u>

As indicated by the record on appeal, defendants presented seven grant deeds showing that defendants' respective lots in the subdivision were conveyed to them by reference to lot and block numbers according to a recorded subdivision map described therein. Nothing in said grant deeds or the recorded subdivision map would appear to indicate an intention by plaintiff to make the boundary of these lots something other than the centerline of the road. Further, the recorded subdivision map identified in the grant deeds clearly shows that each of the lots in the subdivision are fronted by a street or road as depicted on the map. Based on these undisputed facts, the presumption that defendants own to the centerline of the roads fronting their lots is applicable. We note further that, consistent with the presumption regarding road ownership, a 1950 public report filed by the Division of Real Estate for the State of California concerning the same subdivision stated: "Roads in this subdivision are private roads and are to be maintained by the lot purchasers."

Plaintiff responds that the presumption does not apply to *private* roads, a position we have rejected. Plaintiff also attempts to establish its ownership of the roads by referring to extrinsic evidence in the record—i.e., the 1996 Declaration and plaintiff's decades-long history of asserting control over the roads and road maintenance. However, defendants are correct that the existence of such extrinsic evidence is irrelevant where the

8.

grant deeds themselves were not ambiguous or uncertain. (*Safwenberg v. Marquez*, *supra*, 50 Cal.App.3d at pp. 308–309.) Since the grant deeds conveying to defendants their lots in the subdivision are not ambiguous, and nothing is stated in said grant deeds to indicate the centerline is not the boundary, we do not consider extrinsic evidence and the presumption controls.

On these undisputed facts, we agree with defendants that they were entitled to a determination under their quiet title cause of action that they owned to the centerline of the roads bounding their respective lots in the subdivision. However, this holding is *limited to defendants' lots*. We decline to extrapolate, from the seven grant deeds in the record, to the entire subdivision. That is, on the limited record before us we are unwilling to assume that the hundreds of other lot owners' grant deeds all have the same form of description as stated in defendants' grant deeds and/or that nothing in the other lot owners' grant deeds or chain of title indicated the sideline of the road was intended as the lot boundary rather than the centerline.

Based on the foregoing analysis, we hold that defendants are entitled to a determination under their quiet title cause of action that they own to the centerline of the road abutting their respective lots in the subdivision. But we decline to make any determination on this limited record regarding the other lot owners.[4]

III. RELIEF UNDER CIVIL CODE SECTION 845

Civil Code section 845 (section 845) provides a method by which to apportion costs for maintenance of a private right-of-way in the absence of agreement. (*Taormino v. Denny* (1970) 1 Cal.3d 679, 687–688.) Under this section, nonconsenting co-owners of an easement in the nature of a right-of-way may be compelled to contribute their share of the cost of keeping the way maintained. (*McManus v. Sequoyah Land Associates* (1966) 240 Cal.App.2d 348, 355.)

---

[4]    While we might logically assume the conveyances by plaintiff of all the lots in the subdivision to have been made in a consistent manner, our assumption is not the same as proof.

Defendants claim the trial court reversibly erred in requiring them to pay a share of road maintenance costs to plaintiff and Sierra under section 845. In that regard, defendants make two primary arguments. *First*, defendants argue that because the sole ground alleged by plaintiff for standing under section 845 was ownership of the roads, and plaintiff failed to prove such ownership, plaintiff lacked standing to pursue relief under section 845. Concerning Sierra's right to recover under section 845, defendants argue that since Sierra's standing was as an agent of plaintiff, if plaintiff had no standing neither did Sierra. *Second*, defendants contend that even if plaintiff and Sierra were entitled to avail themselves of a recovery under section 845, the trial court erred by failing to properly apportion those costs among the lot owners.

Plaintiff responds that section 845 does not require ownership of the roads themselves but may be based on ownership of an easement to use the roads. Thus, according to plaintiff, even if it was not the owner of the roads, relief under section 845 was still available in this case because, under undisputed facts, plaintiff at least possessed an easement to use the roads within the subdivision. Plaintiff's assertion that it had an easement to use the subdivision roads is premised upon its retention of a lot and other land within the subdivision. In their reply brief, defendants object that this easement theory is being raised for the first time on appeal.[5] Moreover, defendants point out there are no grant deeds or other evidence of title in the record to substantiate that plaintiff retained a lot or other land within the subdivision.

Below, we consider whether defendants have demonstrated their claim on appeal that plaintiff and Sierra lacked standing to pursue relief under section 845, and whether, if relief under that statute was available, road maintenance costs were not properly

---

[5] We reject defendants' contention that the potential easement basis for plaintiff's standing was not before the trial court or is somehow a new issue. For purposes of standing under section 845, the trial court was required to consider whether plaintiff had *either* ownership of the roads in fee, or alternatively, ownership of an easement to use the roads. Had the court not made a finding that plaintiff owned the roads, we are confident for the reasons explained hereinbelow, it would have found an easement based on the record and pleadings before it, as a matter of law.

apportioned by the trial court among the lot owners. As will be seen, defendants'
arguments fail to show reversible error.

A. Standing under Section 845

Preliminarily, we agree with plaintiff's legal contention that section 845 permits
recovery based on ownership of an easement to use the road, and thus does not require
ownership in fee of the land upon which the road lies. The relevant portion of section
845 states: "(a) The owner of any easement in the nature of a private right-of-way, or of
any land to which any such easement is attached, shall maintain it in repair. [¶] (b) If the
easement is owned by more than one person, or is attached to parcels of land under
different ownership, the cost of maintaining it in repair shall be shared by each owner of
the easement or the owners of the parcels of land, as the case may be, pursuant to the
terms of any agreement entered into by the parties for that purpose. In the absence of an
agreement, the cost shall be shared proportionately to the use made of the easement by
each owner." (§ 845, subds. (a) & (b).) As the wording of the statute makes clear,
section 845 applies not only to those who own the underlying land to which the right-of-
way easement is attached, but *also* to those who own an easement to use the right-of-way.

As noted, plaintiff's position is that even if it lacks road ownership, it has *an
easement* based on its ownership of a lot within the subdivision. The principal legal
theory for recognition of an easement under the circumstances of the present case was
stated in *Danielson v. Sykes* (1910) 157 Cal. 686, as follows: "It is a thoroughly
established proposition in this state that when one lays out a tract of land into lots and
streets and sells the lots by reference to a map which exhibits the lots and streets as they
lie with relation to each other, the purchasers of such lots have a private easement in the
streets opposite their respective lots, for ingress and egress and for any use proper to a
private way, and that this private easement is entirely independent of the fact of
dedication to public use, and is a private appurtenance to the lots, of which the owners
cannot be divested except by due process of law." (*Id*. at p. 689.) In that same opinion,
the Supreme Court explained further: "When a lot conveyed by a deed is described by
reference to a map, such map becomes a part of the deed. If the map exhibits streets and

11.

alleys it necessarily implies or expresses a design that such passageway shall be used in connection with the lots and for the convenience of the owners in going from each lot to any and all the other lots in the tract so laid off.  The making and filing of such a plat duly signed and acknowledged by the owner, as was the case here, is equivalent to a declaration that such right is attached to each lot as an appurtenance." (*Id*. at p. 690.)[6]

Defendants oppose plaintiff's contention that it has standing under section 845 based on an easement.  Among other things, defendants argue that no easement to use the roads in the subdivision may be recognized in favor of plaintiff since no specific proof was presented at trial in the form of a grant deed or other title evidence to demonstrate that plaintiff retained a lot within the subdivision.  We find defendants' argument misplaced in light of the parties' pleadings on this issue.  Plaintiff's complaint asserted that plaintiff retained a lot within the subdivision, called the caretaker's lot, and that it also retained other land or facilities within the subdivision.  In defendants' cross-complaint filed in 2016, which was a verified pleading, defendants conceded the matter of plaintiff's lot ownership, affirming as follows:  "The subdivision consists of approximately 365 lots, including … two lots owned by [plaintiff].  One lot owned by [plaintiff] is improved with what is known as the caretaker's cabin ….  The other lot owned by [plaintiff] is unimproved."  Defendants' factual concession on this matter, which agreed with plaintiff's allegations, constituted an admission on defendants' part of plaintiff's retained ownership of at least one lot in the subdivision at that time.[7]  It is well

---

[6]    Along with its retention of one of the lots within the subdivision, plaintiff argues that it *also* retained *other* acreage therein, such as recreational facilities and maintenance facilities, from which an easement to use the roads would arguably be implied.  (See *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141 [an easement will be implied when, among other requirements, a grantor transfers a portion of his property to another, and, at the time of the conveyance, the grantor's prior existing use of the retained portion of the property was of such a nature that the parties must have intended or believed that such use would continue].)

[7]    Defendants' cross-complaint also alleges that all lot owners "hold and have a non-exclusive easement for ingress and egress to their property and within the subdivision …."

12.

established that the unequivocal admission of fact in a pleading may be relied on by the court as a conceded matter in the case, and no proof of the fact is necessary. (*Aljabban v. Fontana Indoor Swap Meet, Inc*. (2020) 54 Cal.App.5th 482, 497; *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271, quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510–511.)

Based on the foregoing, we conclude that plaintiff's retention of at least one lot in the subdivision during the relevant time period was established as an undisputed or admitted fact. Accordingly, under *Danielson v. Sykes*, *supra*, 157 Cal. 686, 689–690, plaintiff had an easement to use the roads within the subdivision and therefore had standing to pursue relief under section 845.[8] The challenge to Sierra's standing is likewise unavailing, because the only argument made by defendants concerning Sierra was that because Sierra's standing was as an "agent" for plaintiff, in the event plaintiff had no standing then neither did Sierra.[9] For these reasons, defendants' appeal based on alleged lack of standing under section 845 fails.

B. Apportionment of Road Maintenance Costs

Defendants argue the trial court erred or abused its discretion in how it allocated road maintenance costs among the lot owners in the section 845 causes of action. As more fully explained below, we disagree.

Under section 845, the cost of maintenance of a private right-of-way shall be shared pursuant to the terms of any agreement between the parties, but in the absence of such an agreement, the cost "shall be shared proportionately to the use made of the easement by each owner." (§ 845, subd. (b).) Where an action is brought against a

---

[8]     Additionally, we note the parties reached a stipulation at trial that each lot owner has an easement to a public road.

[9]     Defendants do not challenge the validity of the trial court's conclusion that Sierra's standing may be based on agency, and therefore we do not consider that issue. We note the trial court's decision on Sierra's standing was based not only on Sierra's status as an agent for plaintiff, but also on the fact that Sierra was comprised of lot-owning shareholders who directed Sierra to undertake road maintenance services.

nonperforming owner under this section, the trial court determines that person's "share" or "proportion" of the cost. (§ 845, subd. (c).) The nature of such an action, in cases where there is no agreement, is described in the statute as one for "contribution" (§ 845, subd. (c) & (c)(3)), which sounds in equity. Inherent to its determination to allocate costs, the trial court exercises its discretion in deciding upon the appropriate amount or share owed by each of the lot owners under the circumstances.

We review such a determination for abuse of discretion. A trial court abuses its discretion where it exceeds the bounds of reason, all the circumstances before it being considered. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) However, discretion is not unlimited or arbitrary but must be exercised within the confines of the applicable legal principles. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Of course, to the extent we are required to decide whether the trial court properly applied the governing statute, we review that issue independently. (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1115.)

On the nature of a trial court's discretion in deciding on what constitutes a proportionate share of costs, the Court of Appeal in *Healy v. Onstott* (1987) 192 Cal.App.3d 612 (*Healy*) made the following general comments: "Literally construed, 'proportionately to the use made' would require the trier of fact to distinguish between residents having two cars and those owning only one, between easement holders heating their homes with electricity and those being serviced periodically by heavy butane trucks. Given that the amount in controversy will ordinarily be small, no such intention can be attributed to the Legislature. In the interest of speed and economy of proceedings, the arbitrator and judge must be free to paint with a broad brush. Obviously, a property owner may be asked to contribute only to the maintenance of that segment of the right of way lying between his driveway and the public road. Also, a distinction must be made between a parcel having an occupied residence and one which is unimproved, although we are not prepared to say that the owner of the latter should escape all contribution as his property is obviously benefitted by the maintenance of the common easement. But

14.

within those general guidelines, the trier of fact must be allowed to fashion any reasonable contribution scheme." (*Id*. at p. 617.)

In the present case, in our consideration of the trial court's allocation among lot owners of the cost of road maintenance under section 845, we shall separately address plaintiff's cause of action regarding fiscal year 2012–2013, and Sierra's cause of action under the same statute regarding fiscal years 2013–2014, 2014–2015 and 2015–2016.

As to plaintiff's cause of action under section 845, the trial court found an "implied agreement" existed at the relevant time period between plaintiff and all of the lot owners, including defendants, that the cost of road maintenance would be shared equally. Based on that agreement, the trial court divided the road maintenance costs equally, and each lot owner was required to pay $347.49 per lot. Defendants' appeal does not make any adequate challenge to the court's finding of an implied agreement supported by sufficient citation to the record and cogent legal argument, and we therefore treat that issue as forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.) Section 845, subdivision (b), expressly provides that the cost of maintaining an easement may be apportioned "pursuant to the terms of any agreement entered into by the parties for that purpose." Accordingly, no error is shown regarding the trial court's award to plaintiff under section 845.

As to Sierra's cause of action under section 845, although the trial court apparently did not rely on an implied agreement on how to allocate road maintenance costs, the trial court still found that *equal* allocation among all the lot owners was appropriate under the circumstances. The trial court held: "Equal allocation of road maintenance costs to each individual lot owner is appropriate in this case, because it is the only straightforward, rational, and equitable method … to recoup the costs of providing road maintenance and snow removal services." The trial court explained its conclusion as follows: "With more than three hundred lots within the community, approximately six miles of roads providing access to and through the subdivision, a mix of full-time and vacation-home residents, community-wide access to use of all of the roads for such things as waste management/needle dump, and easement rights to use the road network, the proper

measure … proportionate to the use made under Section 845 is an equal measure for each of the individual, surveyed lots.  Otherwise, the problem of determining the proportional use made of the roads [by] hundreds of lot owners would be logistically nightmarish."

We note the trial court did make reference to the general guidance articulated in *Healy* regarding proportionate allocation, finding some to be applicable and some distinguishable.  The trial court's decision explained:  "As the court in *Healy* stated, '[i]n the interest of speed and economy of proceedings, the arbitrator and judge must be free to paint with a broad brush.'  [Citation.]  While [*Healy*] also stated in *dicta* that 'a property owner may be asked to contribute only to the maintenance of that segment of the right of way lying between his driveway and the public road' and that 'a distinction must be made between a parcel having an occupied residence and one which is unimproved,' the court was not faced with a situation where, as here, the historical use of the roads and the myriad means of accessing a public road make a distribution other than by equal measure impracticable.  Neither was the court faced with a situation where, as here, the community's roads provide access to all residents for recreation and waste management access.  Furthermore, this is not the common situation where there is one private road with a handful of lots along that easement.  Here, there are more than three hundred lots in the community with a haphazard road network."

In challenging the trial court's decision to allocate costs *equally* among the lot owners on Sierra's cause of action under section 845, defendants argue, based on a strict reading of the statute, that the trial court *necessarily* erred by not specifically ordering costs to be shared "proportionately to the use" (§ 845, subd. (b)) made by each lot owner of the private roads in the subdivision.  We disagree.  An action under section 845 is one for contribution and is therefore equitable in nature.  (*Healy*, *supra*, 192 Cal.App.3d at p. 616.)  Although the statute sets forth as a standard rule that costs are to be allocated in a manner proportionate to use of the road, the statute does not address the extraordinary or special situation in which ascertaining road use of the respective individual owners would be impracticable.  We are of the opinion that in an extreme or unusual case where calculation of costs based on road use would be impracticable or infeasible, a court would

16.

have discretion to apportion costs equally as an equitable method of allocation under those unique circumstances. (See, e.g., *Pike v. Tuttle* (1971) 18 Cal.App.3d 746, 753 [where a statutory rule did not adequately cover the situation, equitable principles applied].) That appears to be precisely what occurred here. As the trial court explained at length in its SOD, due to the hundreds of lots involved in a winding circuitous road network, with myriad purposes for regular access and use to traverse all parts of the subdivision's six miles of roads, it was not reasonably feasible for plaintiff to know the material details of each lot owner's use of the roads. Under the circumstances, we find that no prejudicial error or abuse of discretion resulted from the particular cost allocation arrived at by the trial court.

Moreover, we note the trial court *did* make a distinction in its ruling based on road usage by distinguishing between unimproved and improved property. In its SOD, the trial court stated: "Whereas there are other property owner(s) with land adjacent to the roads whose lands are not improved and have not been subdivided into lots, those land owners must pay their proportional share based upon actual use. Such proportional share of these property owners must then reduce the overall costs of the road services that [Sierra] seeks to recoup from individual lot owners, which then share in those costs in an equal proportion." As correctly indicated by plaintiff in its brief as respondent herein: "Under this ruling Respondents are obligated to monitor the occasional, infrequent use of the roads by owners of undeveloped land adjacent to the Subdivision, charge those landowners for their use, and then charge the lot owners for the balance of the cost to maintain the private roads." This part of the trial court's ruling incorporated a use-based variable into the manner in which road costs would be calculated.

For all the reasons discussed above, we conclude that defendants have failed to affirmatively demonstrate the trial court prejudicially erred or abused its discretion in the cost allocation arrived at by the trial court pursuant to section 845 under the unique circumstances of this case.

17.

## DISPOSITION

The judgment of the trial court is reversed in part and affirmed in part. With respect to defendants' quiet title cause of action as alleged in their cross-complaint, the judgment of the trial court is reversed and remanded with instructions to enter a revised judgment determining that defendants own to the centerline of the road abutting their respective lots in the subdivision. In all other respects, the judgment of the trial court is affirmed. Each party is to bear their own costs on appeal.

FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

18.